DECISION AND ORDER
WENONA SINGEL, Chief Justice.
This case involves the recall election of the Tribal Chair and Vice Chair, Fred Kiogima and Debbie DeLeon. Both were the subjects of a recall election conducted by the Election Board on November 17, 2014. On December 1, 2014, Mr. Kiogima and Ms. DeLeon filed a complaint against the LTBB Election Board in the Tribal Court challenging the recall election result and the manner in which it was conducted. The Tribal Court, following a hearing on a motion to dismiss for lack of subject matter jurisdiction, dismissed the case because it concluded that the complaint was filed outside the Constitution’s limitations period for election challenges.
In this appeal, Mr. Kiogima and Ms. DeLeon request that the Appellate Court reverse the ruling of the Tribal Court. For the reasons presented below, the Appellate Court concludes that the method of computing time for the ten-day Constitutional limitations period must count all calendar days, including intermediate Saturdays, Sundays, and legal holidays. However, if the last day for filing an election challenge falls on a Saturday, Sunday, legal holiday, or other day when the Tribal Court is inaccessible, that day is not counted and instead, a petitioner may submit a complaint until the close of business on the next available day that the Tribal Court is open. Under this method of computing days, the Appellate Court concludes that Mr. Kiogima and Ms. De-Leon’s election challenge is timely.
Background
Mr. Kiogima and Ms. DeLeon (the “Appellants”) were elected as the Tribal Chair and Vice Chair, and they were sworn into office on August 18, 2013. During the summer and fall of 2014, Mr. Kiogima and Ms. DeLeon were subject to a recall effort. After the Election Board certified that the required number of signatures had been obtained on two recall petitions, it refused to provide Mr. Kiogima a copy of the recall petition signature sheets. This denial, coupled with the fact that one of the Election Board members had “liked” a Face-book page called Remove Kiogima/De-Leon, led Mr. Kiogima and Ms. DeLeon to file their first complaint against the Election Board on October 31, 2014, approximately two weeks after the Recall Election ballots had been mailed to the Tribal citizenship, and' just over two weeks before the close of the Recall Election on Novem *299 ber 17, 2014. In this first complaint, Mr. Kiogima and Ms. DeLeon sought an order enjoining the completion of the recall election, and at a hearing in November 12, 2014, they also requested public disclosure of the recall petition signature pages. In an Order dated November 18, 2014, the Tribal Court ordered the Election Board to disclose the signature pages by November 14, 2014, but it denied the request to stop the completion of the Recall Election.
Mr. Kiogima and Ms. DeLeon filed their second complaint against the Election Board on December 1, 2014, fourteen days after the Recall Election was concluded on November 17,2014. This complaint, which is the subject of this appeal, asked the Court to hold that the Recall Election was unlawful and invalid. The complaint also requested a court order reinstating the Appellants to their office of Chair and Vice Chair and sanctioning the Election Board by ordering them to pay reasonable costs and attorney fees.
On December 2, 2014, one day after the Appellants filed their second complaint, the Election Board filed a motion to dismiss for lack of subject matter jurisdiction. The Tribal Court received a brief in support of the motion to dismiss and a response from the Appellants, and it conducted a hearing on the motion on December 12, 2014. At the hearing and in the briefs, the Election Board argued through their counsel that Mr. Kiogima and Ms. DeLeon’s complaint constituted an election challenge governed by Article XII, Section F of the LTBB Constitution. The Election Board further argued that under Section F, the complaint was untimely due to the fact that the complaint was filed fourteen days after the Recall Election was concluded, and Section F provides that a registered voter may file an election challenge with the Tribal Court within ten days after the election. In response, Mr. Kiogima and Ms. DeLeon argued through their counsel that the intent of Section F was to provide tribal citizens with a full ten days to file an election challenge. Since the Tribal Court was closed on the tenth day due to a holiday, they argued that they should have until the next day that the Tribal Court was open for business to file their complaint.
On December 14, 2014, the Tribal Court issued an Order granting the Election Board’s motion to dismiss for lack of subject matter. In its opinion, the Tribal Court noted that Mr. Kiogima and Ms. DeLeon filed their complaint on December 1, 2014, fourteen days after the conclusion of the Recall Election. The Tribal Court then applied the Section F of Article XII of the LTBB Constitution, which provides that election challenges may be filed “within ten (10) days after the election.” In its analysis, the Tribal Court characterized Mr. Kiogima and Ms. DeLeon as arguing that the ten day requirement should be interpreted to mean ten business days rather than ten calendar days. The Tribal Court then determined that the Appellate Court precedent of Harrington v. LTBB Election Bd., No. A-019-1011 (LTBB Ct. App.2012) was controlling. In Harrington, the Appellate Court held that Section F’s “ten days” rule refers to “ten consecutive days, without regard for weekends, holidays, or days when tribal administrative offices are open or closed,” In light of the Harrington precedent, the Tribal Court concluded that the election challenge was untimely, depriving the Tribal Court of subject matter jurisdiction over the complaint. The Order concluded by dismissing the complaint.
On December 16, 2014, Mr. Kiogima and Ms. DeLeon filed a notice of appeal with the Appellate Court. The Appellants request that the Appellate Court reverse the ruling of the Tribal Court. The Appellate *300 Court held a scheduling conference on December 30, 2014 to identify the issues on appeal, confirm the transmittal of the full Tribal Court record, and set a briefing schedule. The parties filed briefs with the Appellate Court on January 30, 2015 and February 4, 2015, and the Appellate Court heard oral arguments on March 6, 2014.
Analysis
The issue on appeal is whether the Appellant’s complaint filed on December 1, 2014 was untimely under Article XII, Section F of the LTBB Constitution. If the complaint was untimely, the Tribal Court would be deprived of subject matter jurisdiction and the dismissal of the complaint would be proper.
Because the issue on appeal relates to a conclusion of law rather than a factual finding, the Appellate Court applies a de novo standard of review under Rule 7.501(E) of the Appellate Procedures. Under this standard of review, the Appellate Court refers to the Tribal Court’s record to determine the facts, but it does not defer to the Tribal Court’s legal conclusions.
Election challenges like the one that forms the basis of the complaint in this case are governed by Article XII, Section F of the LTBB Constitution. Section F provides:
Any registered voter of the Little Traverse Bay Bands of Odawa Indians may challenge for cause the results of any election by filing a written challenge with the Tribal Court within ten (10) days after the election....
In Harrington v. LTBB Election Bd., the Appellate Court applied Section F to a case in which an election challenge was filed fourteen days after the conclusion of a recall election. In that case, the Appellate Court concluded that the election challenge was untimely. The party that filed the election challenge had believed that the ten days referred to in Section F constituted ten business days rather than ten calendar days. The Appellate Court, noting that Section F did not specify business days, concluded that the Constitution’s “ten days” requirement referred to “ten consecutive days, without regard for weekends, holidays, or days when tribal administrative offices are open or closed.”
Counsel for the Election Board asserts that the Harrington decision squarely applies to this case and should control. However, we note that this case involves facts not present in the Harrington case. Here, the Tribal Court was closed on the tenth day, precluding the Appellants from having access to the Tribal Court to file their complaint and submit their filing fee in person. In the Harrington case, the Tribal Court was open on the tenth day, yet the plaintiff still filed four days later by improperly relying on the theory that “ten days” would mean “ten business days.” In this case, the Appellants do not seek to overturn the Harrington decision’s ruling that “ten days” equals “ten calendar days,” contrary to the conclusion of the Tribal Court’s Order from December 14, 2014. Rather, the Appellants argument agrees that “ten days” equals “ten calendar days,” but they propose that this case be distinguished from Harrington because it involves the novel situation where the Tribal Court was closed for a legal holiday on the tenth day.
The Appellate Court agrees with the Appellants that the Harrington decision’s holding that “ten days” equals “ten calendar days” is binding. However, it also agrees that the Harrington decision should be supplemented with a rule that provides that when the tenth day falls on a legal holiday, a Saturday, a Sunday, or a day when the Tribal Court is otherwise not *301 accessible, a plaintiff may have until the close of business on the next day that the Tribal Court is open. For the following reasons, the Appellate Court is persuaded that this is the legally correct rule.
First, the Appellate Court notes that Section F, in stating that a plaintiff “may challenge for cause the rules of any election by filing a written challenge with the Tribal Court within ten (10) days after the election,” does not specify the method that the Tribal Court shall apply to compute time. Experience indicates that time limitations may be computed in varying ways, creating multiple opportunities for conflict among parties. For example, as the Harrington case illustrates, days may be computed by counting either calendar days or business days. Our precedent clarifies that we apply calendar days to Section F. Other issues can also arise, however, such as whether the first day in a limitations period should be counted or skipped when counting days. And as this case presents, there is also the issue of whether the final day in a limitations period should be counted when that day falls on a date when the Tribal Court is closed. By adopting a method for computing time, the Appellate Court interprets and gives effect to the “ten days” requirement of the Section F.
Second, the Appellate Court recognizes that the ten day limitations period in Section F is intended to protect at least two critical interests. The first is the protection of the right of registered voters to challenge elections when they perceive that elections have been conducted in violation of the laws that govern them. When clarifying the method of computing time for purposes of the ten day limitations period, the Appellate Court must consider whether its method protects and enforces the right of registered voters to have a full ten days to challenge elections. We recognize that when someone identifies conduct that appears to violate the law, they generally are not prepared to instantly file a complaint. They must first resolve within their conscience whether they believe they have a legitimate complaint based on their understanding of the facts and the law. They must then determine whether they have the means to hire an attorney to represent their interests. In many cases, they must also access immediate financial resources to pay a retainer for an attorney. Finally, if they find an attorney to represent them, the attorney must assemble the facts, research the law, and draft a complaint. Since these steps each require time, it seems logical and fair to conclude that the intention of Section F is to give plaintiffs the full ten days to file their complaint. Under the Election Board’s argument, the last day the Appellants would have available to file in person and submit their filing fee would be November 26, just nine days after the conclusion of the Recall Election. This rule would effectively deprive Appellants of the full ten days needed to prepare and file a complaint.
The Appellate Court also recognizes that the ten day limitations period in Section F also protects the critical interest of ensuring finality for tribal elections. An election challenge disrupts the tribal community’s ability to benefit from the immediate effectiveness of an election result. It introduces uncertainty regarding the legitimacy of the Election Board’s certification of results, and it results in added expenses related to legal fees, administrative costs, and questions regarding the continued compensation of ousted tribal officers who challenge the legality of their removal. The Appellate Court recognizes that the ten day limitations period of Section F should not be enforced in a way that creates indefinite uncertainty and added expenses for the tribe. However, it also finds that the rule adopted in this opinion *302 provides for certainty by requiring that election challenges be filed on the very next day that the Tribal Court is open for business when the Tribal Court is closed on the tenth day.
Third, the Appellate Court notes that the method that it adopts in this opinion for computing time is consistent with the Tribal Court rules of civil procedure and the civil procedure rules adopted in the state and federal courts. Rule VII of the LTBB Rules of Civil Procedure provides the following:
Rule VII. Time
Section 1. Computation
Unless otherwise provided in these Rules, in computing any period of time set forth herein, the day that the period is to commence shall not be counted and the last day of the period shall be counted; provided, however, that ... any period which would otherwise end on a Saturday, Sunday, legal holiday, or Band holiday will be deemed to end on the next day which is not a Saturday, Sunday, legal holiday, or Band holiday.
(Emphasis added).
Furthermore, the Federal Rules of Civil Procedure provide a similar rule with respect to the computation of time:
Rule 6. Computing and Extending Time; Time for Motion Papers
(a) Computing Time. The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.
(1) Period Stated in Days or a Longer Unit, When the period is stated in days or a longer unit of time:
(A)exclude the day of the event that triggers the period;
(B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and
(C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.
[[Image here]]
(3) Inaccessibility of the Clerk’s Office. Unless the court orders otherwise, if the clerk’s office is inaccessible:
(A) on the last day for Filing under Rule 6(a)(1) then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday; or
(B) during the last hour for filing under Rule 6(a)(2), then the time for filing is extended to the same time on the first accessible day that is not a Saturday, Sunday, or legal holiday.
(Emphasis added).
The Michigan Court Rules adopt a similar method of computing time. They provide the following:
MCR 1.108 Computation of Time
In computing a period of time prescribed or allowed by these rules, by court order, or by statute, the following rules apply:
(1) The day of the act, event, or default after which the designated period of time begins to run is not included. The last day of the period is included, unless it is a Saturday, Sunday, legal holiday, or day on which the court is closed pursuant to court order; in that event the period runs until the end of the next day that is not a Saturday, Sunday, *303 legal holiday, or day on which the court is closed pursuant to court order.
(2) If a period is measured by a number of weeks, the last day of the period is the same day of the week as the day on which the period began.
(3) If a period is measured by months or years, the last day of the period is the same day of the month as the day on which the period began. If what would otherwise be the final month does not include that day, the last day of the period is the last day of that month. For example, “2 months” after January 31 is March 31, and “3 months” after January 31 is April 30.
(Emphasis added).
Because this rule is so widely adopted in our own rules of civil procedure and in the rules applied by other jurisdictions, the Court finds that it is reasonable for litigants to expect a similar rule to be applied to election challenges as well. Furthermore, the Court is also persuaded that this “last day” rule reflects good policy, since it prevents a litigant from being deprived of the full number of days for filing a complaint. It would be unfair, for example, if some litigants had the full ten days to file a complaint because the Tribal Court happened to be open on the tenth day, while other litigants effectively had only nine, eight, or even seven days to file because the last days of the limitations period fell on days when the Tribal Court was closed due to a holiday, weekend, or for other administrative reasons. In addition, if the Tribal Court was unexpectedly closed on the last day due to inclement weather, a power outage, or a fire, it would seem unfair to deprive a party from filing their complaint
Finally, the Appellate Court also rejects the Election Board’s argument that the Appellants could have filed their complaint by facsimile or email on the holiday when the Tribal Court was closed. It is true that pleadings can be filed by facsimile or email if the originals are provided to the Court within three business days. However, many parties find that filing an initial complaint in person in the Tribal Court is essential. By filing an initial complaint in person, a plaintiff can see exactly what is being done with their documents, and they can confirm immediately that they have satisfied the technical requirements for filing. They can also submit their filing fee in person and receive a copy of their received check. For these reasons, the Appellate Court remains convinced that the last day rule articulated above remains critical for ensuring that tribal citizens have the full benefit of the protections provided by the Constitution.
Conclusion
For the reasons described above, the Appellate Court REVERSES the Tribal Court’s Order dated December 14, 2014, VACATES the Tribal Court’s dismissal of the case, and REMANDS this matter for further resolution in accordance with the Tribe’s laws and procedures in the Tribal Court.
DECIDED AND APPROVED BY A UNANIMOUS APPELLATE COURT.